UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA F. MERTES,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | CASE NO. C06-1321-MJB<br><br>MEMORANDUM OPINION |

### I. INTRODUCTION AND PROCEDURAL HISTORY[1]

Plaintiff Patricia Mertes appeals to the District Court from a final decision of the Commissioner of the Social Security Administration [the "Commissioner"] denying her application for Social Security Disability Insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Court AFFIRMS the decision of the Administrative Law Judge ("ALJ").

The undisputed facts and procedural history are taken from Plaintiff's Opening Brief. Dkt. No. 9 at 2-13. Plaintiff Patricia Mertes was struck on the head when a 6 by 2 1/2 foot reader board fell from the ceiling at her workplace. Diagnosed with cervical radicular syndrome, the plaintiff sought both Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits.[2] In her SSDI and SSI applications filed on April 24, 2002, she

---

[1] Pursuant to the consent of the parties, this case has been referred to the undersigned in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.
[2] In a separate claim, the plaintiff also brought a claim for Washington State Department of Labor and Industries disability.

Mertes Memorandum Opinion - 1

alleged an onset date of June 15, 1995. Tr. 9 at 2. Both applications were denied initially and upon reconsideration. On Plaintiff's request, a hearing before ALJ Thomas Robinson was held on September 21, 2004. Tr. 24.

For SSDI benefits, the ALJ found the plaintiff suffered from a variety of severe impairments including post-status anterior cervical fusion discectomy, severe foraminal stenosis, cervical post-laminectomy syndrome, cervicogenic headaches, and chronic pain. Tr. 33. He determined that none of the plaintiff's severe impairments met or equaled the criteria of any listed impairment. *Id.* The ALJ also found that the plaintiff was precluded by her sedentary residual function capacity ("RFC") from performing her past relevant work as a bar tender and manager, but *only* after April 1, 2002. (Emphasis added.) *Id.* He found that she could do past relevant work prior to that time, thus, she was not disabled as directed by medical vocational rule 201.28.

Lastly, the ALJ found that Plaintiff's last date insured for disability benefits was December 31, 2001 and that the plaintiff was not disabled for the period between June 1, 1995 and March 31, 2002, under the SSDI regulations, but disabled for purposes of SSI beginning April 1, 2002. *Id.* On July 21, 2006, the Appeals Council denied her request for review. The plaintiff properly filed this appeal giving this court jurisdiction under 42 U.S.C. § 405(g), and this matter is ready for review.

## II. PARTIES' POSITIONS

Plaintiff presents the following legal claims: 1) the ALJ erred in not ordering a consultative psychiatric evaluation to determine if Ms. Mertes had an additional severe impairment of depression; 2) the ALJ erred when he found Ms. Mertes' severe impairments did not meet or equal a listing; and 3) the ALJ erred in determining Ms. Mertes had the RFC to perform the full range of sedentary work prior to April 1, 2002. Dkt. No. 9 at 13, 15, 19. The plaintiff seeks

reversal and a sentence four remand with instructions to award benefits. *Id*. at 2. Alternatively, the plaintiff asks for a remand with instructions to obtain a consultative examination to determine if her depression is a severe impairment and to consider the impact of it on the onset date as well as her RFC . *Id*. at 24.

The Commissioner responds that: 1) the ALJ properly developed the record; 2) the ALJ properly found Plaintiff's impairments did not meet or equal the listed impairments; and 3) the ALJ's RFC. Dkt. No. 12 at 4, 5, 8. The Commissioner requests the Court to affirm the ALJ's decision because it is supported by substantial evidence and free of legal error.

## III. DISCUSSION

### A. Issue One: Failure to Order Consultative Psychiatric Evaluation

Plaintiff argues that the ALJ erred in his duty to develop the record when he failed to order the consultative examination following the hearing. Dkt. No. 9 at 15. In a footnote of his decision, the ALJ explains that he decided not to obtain an evaluation because he found her disabled on other grounds, thereby giving her supplemental security income rather than SSDI benefits. Tr. 25 n.1; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The Commissioner has argued that another consultative evaluation to consider depression can only be reasonably expected to address the period after Plaintiff's last date insured, because other medical records for the insured period are scant for review and thus, are not indicative of Plaintiff's functioning between 1995 and 2001. The medical expert ("ME"), Robert Aigner, M.D., who testified at the hearing, identified the lack of sufficient records and said a psychological evaluation was "essential." Plaintiff relies upon *Quarles v. Barnhart*, 178 F. Supp.2d 1089 (N.D. Cal. 2001), which holds that it is error as a matter of law when the ALJ does not call a medical advisor, but instead infers, based on the dates of medical treatment, an onset

Mertes Memorandum Opinion - 3

date for currently establishe[d] severe emotional disorders. *Quarles*, 178 F. Supp.2d at 1096. That district court adopted the rationale that determining the onset date of physical impairments is generally not the same as determining one for a mental impairment whose gradual and progressive nature requires the medical expertise for determining an onset date. 178 F.Supp.2d at 1095 fn.8; s*ee also*, SSR 83-20.[3]

The Commissioner distinguishes *Quarles* by citing 20 C.F.R. § 404.1519b(c) as support for the ALJ's refusal when there is no possibility of establishing onset during the insured period. The Commissioner also argues that the ME was confident that the medical records of September 2002 demonstrated that the plaintiff had more diffuse pain, but that it can be explained on the basis of the aggravating incident in March 2002 alone. Tr. 75. Further, the Commissioner argues that the ALJ only has a duty to develop the record, triggered upon a showing of ambiguous evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The Commissioner is correct in that the information regarding non-exertional limitations during the insured period from both the treating sources and the plaintiff's testimony does not show mental impairment, nor does it present ambiguities that trigger the ALJ's duty to develop the record. In the instant case, there is little in the record to establish a diagnosis of depression in the medical records from 2000 through 2002. Although the ME appears to make a connection between Plaintiff's years of chronic pain that is invariably associated with significant depression when he asserts that the need for the additional evaluation was "essential,[4]" nowhere in the

---

[3] Further, the court recognized the ALJ has a more heightened duty to assist a claimant to develop in the record with respect to mental impairments than with physical impairments, *citing* to *Posey v. Apfe*l, found at 2001 WL 725395 N.D. Cal. The Ninth Circuit has endorsed SSR 83-20 "in pertinent part with respect to mental impairment." *Quarles*, 178 F.Supp.2d at 1096.

[4] The record available to the ME also contains an August 2004 report from Jon B. Olson, M.D., a specialist in chronic pain management who treated the plaintiff following her first and second surgeries from 1998 to 2005 which reads as follows:

Mertes Memorandum Opinion - 4

myriad of treatment records during the period of June 1, 1995 to March 31, 2002 did any of Plaintiff's physicians diagnose depression or make any clinical connection between chronic pain and depression.

To the extent that the plaintiff relies upon a 2005 letter from Dr. Olson which was submitted as an exhibit to her opening brief, but not to the ALJ, the Commissioner argues that "Dr. Olson's letter conflicts with the treatment records and other medical evidence." The Commissioner also cites to *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989), for the proposition that a medical opinion solicited after an adverse administrative decision denying benefits carries little, if any weight. Dkt. No. 12 at 11. In her reply brief, the plaintiff asserts that under *Weetman*, the ALJ must give clear and convincing reasons for rejecting the physician's opinion. Dkt. No. 13 at. 8. In the Court's view, the ALJ's reasons meet the clear and convincing standard because Dr. Olson's letter lacked sufficient detail to address the apparent inconsistency raised by the lack of treatment for the 1999-2001 insured period. Moreover, the treating physician's opinion on the ultimate issue of disability is not necessarily conclusive. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Accordingly, the ALJ's decision refusing to obtain a consultative evaluation to determine whether depression was one of Plaintiff's severe impairments was not in error.

//

//

//

---

Ms. Mertes has been left with considerable pain and disability, related to the original injury and subsequent surgeries. She has persistent symptoms of cervical root damage and compression. She has been unable to work for several years. She is not likely to ever return to a level of health which would permit her to engage in substantial gainful employment on a continuous basis. Tr. 999.

Mertes Memorandum Opinion - 5

**B. Issue Two: Failure to Explain Why Plaintiff's Impairments Did Not Meet or Equal the Listing**

    1. <u>Meaningful Judicial Review</u>

The plaintiff lists her multiple impairments and points to the "single cursory sentence" by the ALJ that dismisses the issue of their combined effect to meet or equal a listing. Dkt. No. 9 at 16. Plaintiff relies on *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), which held a summary conclusion by the ALJ as beyond a meaningful judicial review and was thereby inadequate. The Commissioner argues *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990), which held that the ALJ need not provide a more detailed discussion of why the plaintiff's condition did not meet or equal the listings. In *Gonzales*, the court said:

> The regulations merely require the Secretary to "review the symptoms," 20 C.F.R. § 404.1526 (1988), and make specific findings essential to the conclusion. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam); *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). "'An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision."' S*ee Lewin*, 654 F.2d at 635 (*quoting Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3rd Cir. 1979)).

*Gonzales*, 914 F.2d at 1201.

Upon this record, the Court is satisfied that the ALJ included the necessary factual foundations of plaintiff's symptoms and their impact on the plaintiff's daily activities, her functioning ability and consequent limitations. Accordingly, the ALJ's finding that Plaintiff did not meet or equal the listings was not conclusory.

    2. <u>Meeting the Listing</u>

The Commissioner relies upon Dr. Brian McCallis, M.D., the MRI radiologist, and argues that the medical records do not show the degree of nerve root damage that would meet the listing. Tr. 643. The Commissioner points out that the disorder of the spine must result in nerve

Mertes Memorandum Opinion - 6

root damage which is, "characterized by neuron-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [sic]) accompanied by sensory or reflect loss."  Dkt. No. 12 at 6 (*quoting* 20 C.F.R. Pt. 404, Subpart. P, App.1, Listing 104A).  Nothing presented by the plaintiff disputes this and thus, the ALJ was correct in finding that the plaintiff's condition or combined conditions did not meet the listing in December 2001 before the insured status expired.

### 3. Medical Equivalency

Plaintiff also argues that the ALJ needed to make a medical equivalency determination and that he erred by failing to determine whether the combination of [the] impairments is medically equal to any listed impairment.  20 C.F.R. § 404.1526(a); *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996).  Plaintiff cites *James v. Apfel*, 174 F.Supp.2d. 1125, 1130 (2001) which holds,

> If a claimant fails to prove that she meets a particular listing but is able to provide
> sufficient medical findings of equal or greater significance and relating to the
> same impairment, then the ALJ is to consider the issue of equivalence.
> Equivalence is determined on the basis of a comparison between symptoms,
> signs, and laboratory findings of the claimant's impairment, or combination of
> impairments, with the medical criteria shown with the listed impairment.

Plaintiff further argues that in *Marcia v. Sullivan*, 900 F.2d, 172, 176 (9th Cir. 1990), the Ninth Circuit held that in determining equivalency, an ALJ "must explain adequately his [or her] evaluation of alternative tests and the combined effects of the impairments."

Generally, a determination of equivalency requires the testimony of a medical expert.  20 C.F.R. 404.1526.[5]  The Commissioner argues that an expert is not needed in that the plaintiff's MRI results refer to a condition after the insured period.  In view of the MRI results concerning the spine disorder and the treatment records, and/or their lack within the insured period, the ALJ

---

[5] Concerning medical equivalency, the SSA regulation is found at 20 C.F.R. 404.1526 and reads:
Medical evidence will be found "if [the impairment] is at least equal in severity and duration to the criteria of any listed impairment."

Mertes Memorandum Opinion - 7

was correct in finding that the plaintiff's condition or combined conditions did not meet the listing in December 2001. Accordingly, Plaintiff's claim here is not sustained.

### C. Issue Three: Error in Determining the Plaintiff's Residual Functional Capacity by Failing to Consider Non-Exertional Limitations and Improperly Weighing Plaintiff's Credibility

First, the plaintiff argues that the ALJ erred in his RFC assessment by not considering both the plaintiff's mental abilities and non-exertional limitations. Thus, Plaintiff argues that the ALJ neglected to consider the impact of her ongoing pain as well as the possibility of a psychiatric disorder. The Commissioner responds that although there was evidence of pain, the plaintiff failed to point to any medical opinion that was properly before the ALJ that indicated an inability to work or severe restriction due to non-exertional limitations. The ALJ's opinion notes that although Dr. Olson refers to the plaintiff as disabled, it does not contain a definition or explanation for that conclusion. Further, the treating physicians' opinion on the ultimate issue of disability is not necessarily conclusive. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Moreover, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995); 20 C.F.R. § 404.1546(c).

Second, Plaintiff argues that in addition to the objective medical evidence, her testimony of ongoing pain and its disabling effect was credible and met the *Cotton* analysis found in *Smolen v. Chater*, 80 F.3d 1373, 1281 (9th Cir. 1996). The Commissioner argues that the ALJ accepted the plaintiff's testimony as credible, but found her "more limited" after her insured status expired in December 2001. Dkt. No. 12 at 12. The ALJ stated:

> The claimant initially contacted the agency about applying for benefits on April 12, 2002. This coincided with an increase in her symptoms as previously noted in the medical records. Her written statements concerning her functioning were made after this date and described her situation after the symptoms increased.

Mertes Memorandum Opinion - 8

Similarly, most of her testimony at the hearing was in the present tense. Accordingly, I give her statements considerable weight for the period from April 2002 forward, but much less weight prior to that time. Tr. 30.

The Court agrees there is substantial evidence to support the ALJ's analysis that the record of diagnosis and treatment delineate between 2002 and the years before. The ALJ's analysis of the plaintiff's credibility is supported by the substantial evidence. Therefore, it does not require that the ALJ reach step two of the *Cotton* analysis and this claim of error is not supportable.

## IV. CONCLUSION

The record evidence in this case is supportable by substantial evidence and is free of legal error. The ALJ's decision is hereby AFFIRMED. A copy of the memorandum opinion will be provided to the parties.

DATED this 17th day of August, 2007.

/s/ M. Benton
_____
MONICA J. BENTON
United States Magistrate Judge